MATTHEW MANNISTO - 10354
4442 Hardy Street, Suite 201
Lihue, Hawaii 96766
Tel: (808) 245-2891
Matt@MannistoLaw.com

Standby Counsel for Defendant
BRONSON GOUVEIA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 1:22-cr-00064-LEK |
|---|---|
| Plaintiff, | **DEFENDANT'S MOTION IN LIMINE "1" TO DISMISS COUNTS 6-8 OF THE FIRST SUPERSEDING INDICTMENT FOR VINDICTIVE PROSECUTION; DECLARATION OF COUNSEL; DECLARATION OF ASHLEY KING; EXHIBITS "A"-"C;" CERTIFICATE OF SERVICE** |
| vs. | |
| BRONSON GOUVEIA, | |
| Defendant. | |
| | Trial Date: July 28, 2025 |
| | Time: 9:00 a.m. |
| | Judge: Hon. Leslie E. Kobayashi |

**DEFENDANT'S MOTION IN LIMINE "1" TO DISMISS COUNTS 6-8 OF
THE FIRST SUPERSEDING INDICTMENT FOR
<u>VINDICTIVE PROSECUTION</u>**

1

Comes now, defendant Bronsen K. Gouveia respectfully requesting that this court dismiss counts 6-8 of the first superseding indictment for vindictive prosecution.

I.  **STATEMENT OF FACTS**

On December 31ˢᵗ, 2018 the United States of America filed a criminal complaint against defendant (United States vs. Bronson K. Gouveia / Mag. No. 18-01406 KJM). On January 8ᵗʰ, 2020 United States magistrate judge Kenneth J. Mansfield granted the governments ex parte motion to dismiss complaint and recall arrest warrant. On August 25ᵗʰ, 2022 defendant was charged in a five count indictment which included: one count of possession with intent to distribute methamphetamine (21 U.S.C. 841 (a)(1) and 841 (b)(1)(A)(viii)), count two; possession of firearms in furtherance of a drug trafficking crime (18 U.S.C. 924 (c)(1)(A) and 924 (c)(1)(B)(i)), count 3; possession with intent to distribute methamphetamine 21 U.S.C. 841 (a)(1) and 841 (b)(1)(A)(viii)), count 4; possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. 924 (c)(1)(B)(i)) and count 5; felon in possession of firearms and ammunition (18 U.S.C 922 (g)(1) and 924 (a)(2)).On or about October, 2024, defendant motion to proceed pro-se was granted by this court. On December 19ᵗʰ, 2024 defendants indictment was superseded charging defendant with three additional federal offenses, count 6; conspiracy to distribute and possess with intent to distribute a

controlled substance (21 U.S.C 846), count 7; distribution and aiding/abetting the distribution of a controlled substance (21 U.S.C 841 (a)(1), 841 (b)(1)(A)(viii) and 18 U.S.C 2) and count 8; tampering with a witness (18 U.S.C. 1512 (b)(3)). On December 23rd 2018, defendant Bronsen K. Gouveia was accused of shooting his then girlfriend "Roysha Sabey" in a domestic dispute resulting in Ms. Sabey being injured and defendant being arrested for attempted murder, defendant later pled guilty to an assault in the first degree and received a sentence of 10 years. On the day of the incident on December 23rd 2018, Ms. Sabey stated that she lived at the residence and that the incident was caught on camera, HPD then conducted a search pursuant to a state search warrant to recover the video hard-drive and a semi automatic handgun, while conducting the search HPD reported that they found alleged drugs in a camouflage bag which was closed with men's clothing inside of the bag which were a size medium and large, HPD stated the drugs were in plain view. But HPD pictures shows the camouflage bag was zippered closed, HPD took the alleged drugs out of the camouflage bag and stated that they abandoned the camouflage bag despite the clear evidentiary value of that item, prior to taking the alleged drugs out of the bag they took pictures of the alleged drugs in the camouflage bag and then left the bag behind. Then HPD went on to state that they found a short barreled rifle leaning against the wall and another hunting rifle in the closet. Upon exiting the residence after the search after recovering the hard-drive

3

and home surveillance along with the drugs and the guns they left the house unsecured. The next day HPD using a piggy back warrant came back to the house to search a safe that was within the residence, that safe was left unsecured overnight due to the fact that the house was left unlocked and the safe was broken which would have allowed anyone to enter the house overnight believing that HPD had finished conducting their search. The second search on December 24th 2018, HPD went in to said residence conducting a search of the safe, within the safe they found a yellow and gray women's nike backpack which contained a small amount of methamphetamine, small quantity baggies as well as an additional semi-automatic rifle, and a small amount of currency.

## II. THE ROY BATUNGBACAL DEFENSE

In 2020, Roy made an affidavit taking ownership for the guns and drugs found at the relevant residence related to counts 1-5 of the current superseding indictment.

In 2022, Roy who had by this time been diagnosed with terminal stage 4 cancer made a recorded dying declaration to Keith Shigatomi again taking ownership and responsibility for the guns and drugs found at the relevant residence related to counts 1-5 of the current superseding indictment.

When Roy made his affidavit and his dying declaration defendant was not charged with any federal offenses related to the relevant guns and drugs that he is

currently charged with in counts 1-5 of the superseding indictment in fact defendant had been sentenced in the state to a 10 out of 10 years prison sentence and was under the belief that his federal case had been dismissed and would not be refiled.

On August 25th, 2022 defendant got indicted for counts 1-5 of the current indictment which had not been superseded at that point. On/or about September 16th, 2022 defendant was arraigned on these counts in federal court in the district of Hawaii. In early 2023, defendants then counsel Marc Victor Esq. Notified AUSA Marshall Silverberg pertaining to the existence of Roy Batungbacal and his affidavit and dying declaration, Mr. Silverberg chuckled (see exhibit A) taking Mr. Batungbacal's admission as a joke despite the fact that there is very little corroborative evidence which showed that the guns and drugs in question belonged to defendant. On/or about mid 2024 Mr. Batungbacal after a hard fought battle with cancer passed away. After Mr. Batungbacal's death AUSA Silverberg feigned ignorance with regards to Mr. Batungbacal claiming he had no knowledge that anyone had taken responsibility for the guns and drugs in question, later while at a partial evidence inspection which was recorded by federal agents defendant broached the issue of Mr. Batungbacal at which time AUSA Silverberg admitted that he did in fact know that someone was taking responsibility for the guns and drugs in question and that he did chuckle when Marc Victor presented him with

5

this key exculpatory evidence, however AUSA Silverberg claimed Marc Victor never gave him a name. AUSA Silverberg never requested the name of the person taking responsibility for the guns and drugs in question nor did he file a motion to compel that information from the defense despite the fact that he had more than enough information to make such a motion to this court.

On July 24th, 2024 defendant filed a motion to dismiss for deprivation of due process due to pretrial delay and outlined the above information pertaining to Roy Batungbacal. After this court denied defendants motion to dismiss, AUSA Silverberg took it upon himself and superseded defendant with 3 additional charges. In an email exchange between pro-se defendant and AUSA Silverberg, the prosecutor admitted that the only reason for the additional charges was because defendant exercised his constitutional right to put on a complete defense by presenting the affidavit and dying declaration of Roy Batungbacal to this court.

### III. THE SUPERSEDING INDICTMENT

In the superseding indictment the defendant was charged with 3 additional counts, count 6; conspiracy to distribute and possess with intent to distribute a controlled substance (21 U.S.C 846), count 7; distribution and aiding/abetting the distribution of a controlled substance (21 U.S.C 841 (a)(1), 841 (b)(1)(A)(viii) and 18 U.S.C 2) and count 8; tampering with a witness (18 U.S.C. 1512 (b)(3)). AUSA Silverberg admitted that he sat on the evidence pertaining to counts 6-8 of the

superseding indictment for over 5 years. **Despite the fact that when defendant had verbal domestic disputes with his then girlfriend "Roysha Sabey" he was not charged with a federal offense and Ms. Sabey was not a cooperating government witness or informant as she was in fact a fugitive of the law who had warrants for her arrest and was attempting to elude and evade law enforcement while hiding in Las Vegas, Nevada.**

IV.   ARGUMENT

    A.   **COUNTS 6-8 OF THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED FOR VINDICTIVE PROSECUTION AND/OR DEPRIVATION OF DUE PROCESS DUE TO FURTHER UNNECESSARY PRETRIAL DELAY.**

"Prosecutorial vindictiveness" is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights. See *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). In other words, a prosecutorial action is "vindictive" only if designed to penalize a defendant for invoking legally protected rights. The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, a defendant may show "actual vindictiveness" — that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. See *id*. at 380-81, 384 n. 19, 102 S.Ct. At 2492, 2494 n. 19. This showing is, of course, exceedingly difficult to

7

make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicate "a realistic likelihood of `vindictiveness[,]'" a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. See *Blackledge v. Perry*, 417 U.S. 21, 27- 29, 29 n. 7, 94 S.Ct. 2098, 2102-03, 2103 n. 7, 40 L.Ed.2d 628 (1974). If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively

     In the current case AUSA marshal Silverberg's intention was clear, prior to the superseding indictment he claimed that the government possessed overwhelming evidence with regards to counts 1-5 of the indictment which were "possession with intent to distribute methamphetamine (21 U.S.C. 841 (a)(1) and 841 (b)(1)(A)(viii)), count two; possession of firearms in furtherance of a drug trafficking crime (18 U.S.C. 924 (c)(1)(A) and 924 (c)(1)(B)(i)), count 3; possession with intent to distribute methamphetamine 21 U.S.C. 841 (a)(1) and 841 (b)(1)(A)(viii)), count 4;  possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. 924 (c)(1)(B)(i)) and count 5; felon in possession of firearms and ammunition (18 U.S.C 922 (g)(1) and 924 (a)(2))". Based on these charges it would make little sense for the government to supersede defendant with

evidence they had for over five years especially after defendant's motion to dismiss for deprivation of due process due to pretrial delay, it would appear that the government intended to double down on it's unconstitutional delay in this case as based on the charges added in the superseding indictment defendant would have a constitutional right to investigate all new charges but especially the conspiracy counts.

    Modern prosecutors have enormous authority in every phase of a criminal case, from the start of an investigation through the sentencing of a defendant after conviction. The source of that authority is the discretion the criminal justice system vests in prosecutors to decide whether to initiate an investigation, which charges to file, when to file such charges, and whether to offer a plea bargain or request leniency. Under the current sentencing regime for federal cases, the prosecutor, not the trial judge exercises primary control over the sentence a particular defendant will receive. Not surprisingly, some prosecutors have abused this authority, or at least exercised it in a fashion that calls into question the fairness of their conduct. in *Berger v. United States*, the Supreme Court asserted that the government's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done," and that it is therefore a prosecutor's duty "to refrain from improper methods calculated to produce a wrongful conviction[even] as it is to use every legitimate means to bring about a just one."16 This duty of

9

prosecutors described in Berger furnishes the basis for courts to assert that when the government crosses the line between proper and improper methods, what has taken place is "prosecutorial misconduct."

In the current case the government has continuously delayed charging decisions in an attempt to gain a strategic advantage for example the government has continuously claimed that they were ready for trial however every time we get close they make a decision which knowingly delays the completion of this case the above conduct is no different. The governments excuse that the only reason they charged defendant with additional counts by way of the first superseding indictment is an unacceptable and bad attempt at cloaking vindictive prosecution and prosecutorial misconduct. AUSA Silverberg has screamed at the top of his lungs from the onset of this case that he had overwhelming evidence with regards to count 1-5 of the superseding indictment, AUSA Silverberg has also claimed that the Roy Batungbacal defense is somehow bogus or a lie when in fact he has no evidence of that his only defense to the Roy Batungbacal defense is to feign ignorance and claim he was never informed when in fact Marc Victor alerted him with regards to Mr. Batungbacal and he chuckled as if it was a game, further in light of the superseding indictment defendant would have not been required to turn that information over to the prosecution at that time. In a similar vein previously AUSA Silverberg flaunted the mother of Roy Batungbacal as if she was the

smoking gun that would prove that the guns and drugs in question didn't belong to her son when in fact recorded prison calls between Mr. Batungbacal and his mother proves that she was aware of his possession of drugs and guns and of the fact that he "takes his own burn", See Exhibit (B).

    Despite the fact that defendant has a constitutional right to investigative assistance with regards to the new counts in the superseding indictment this court has severely limited and outright stopped defendant from exercising his constitutional right to investigative assistance despite the fact that the government has continued to investigate and gather evidence to this day therefor defendant should have been able to have similar investigative assistance to help develop evidence which has been dormant for over 5 years due to the governments unconstitutional delay of their wrongful prosecution of defendant. If this court were to dismiss the additional counts added by the first superseding indictment it would negate its failure to allow defendant the constitutional investigative assistance that he is entitled to and would still allow the government to proceed on the 5 counts which they claim they have overwhelming evidence for.

    **B.    Ascertaining Prosecutorial Intent**

    When the Supreme Court refers to intent as a standard by which to assess the propriety of the prosecutor's conduct, the question of whether courts are to consider the actual, subjective motives or knowledge of the prosecutor still

remains. Unfortunately consideration of prosecutorial intent "is not the result of any overarching theory concerning the role of intent in the constitutional regulation of prosecutorial conduct—at least not one that has been articulated by the courts." The Supreme Court could empower judges to ask prosecutors why they chose a particular course of action, but such an inquiry is unlikely to yield reliable information concerning possible violation of a defendant's rights. If a constitutional determination of prosecutorial misconduct required the offending party to admit to the violation, or at least to disclose an improper motive for acting, then few if any such violations would be found. References to a prosecutor's intent are misleading because the Court largely avoids giving lower courts the authority to inquire into a prosecutor's actual motives, while at the same time asserting that an evaluation of intent is an important facet of the constitutional equation. Rather than relying on an assessment of the prosecutor's subjective intent, the Court has approached the issue of intent as an element of prosecutorial misconduct in two different ways. The Court's first approach employs a completely objective standard, by which courts are to infer the improper intent from the conduct and statements of prosecutors, but are not to compel prosecutors to respond to any judicial inquiry into their subjective motives.

    The Court's second approach imposes a high standard for finding a constitutional violation, one that will subject the prosecutor to questioning

12

regarding his motives only in cases of the most blatant misconduct. Such an inquiry will be largely duplicative of the available evidence because the violation will be so clear. The exception to this approach is *Batson v. Kentucky*, which empowers judges to require prosecutors, and defense counsel for that matter, to explain the reasons for removing a juror from the panel through the use of a peremptory challenge. Apart from Batson, the Supreme Court precludes real scrutiny of a prosecutor's subjective intent because permitting such an inquiry as a proxy for determining whether a defendant's constitutional rights were violated engenders an even greater harm in the criminal justice system.

      Although one reason the Court fails to inquire into prosecutorial motive is possibly the result of the haphazard nature of the constitutional analysis, it is more likely that it is simply unrealistic to expect an advocate to reveal completely the reasoning for a particular decision made during an adversarial proceeding, assuming one is even articulable. This premise is paralleled by the fact that the law recognizes a protection for an attorney's work product in civil litigation to preserve the confidentiality of a lawyer's thoughts from discovery, even if the information is not otherwise privileged. This is the case because attorneys need a "certain degree of privacy" to fairly represent their clients. See *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56 (1988) ("[W]here the error is harmless, concerns about the 'integrity of the [judicial] process' will carry less weight, and that a court

may not disregard the doctrine of harmless error simply 'in order to chastise what the court view[s] as prosecutorial overreaching.'" (quoting *United States v. Hasting*, 461 U.S. 499, 507 (1983)). In federal prosecutions, any errors in the proceeding that do not affect "substantial rights" are disregarded. FED. R. CRIM. P. 52(a). Most constitutional errors are also reviewed to determine whether the defendant has been prejudiced under the standard set forth by the Supreme Court in *Chapman v. California*, 386 U.S. 18 (1967). See WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 27.6 (2d ed. 1992) (summarizing various harmless error standards). The Eleventh Circuit echoed a lament of appellate courts, stating that "[w]e find ourselves in a situation with which we are all too familiar: a prosecutor has engaged in misconduct at trial, but no reversible error has been shown." *United States v. Wilson*, 149 F.3d 1298, 1303 (11th Cir. 1998). Steven Alan Reiss, Prosecutorial Intent in Constitutional Criminal Procedure, 135 U. PA. L. REV. 1365, 1366 (1987).

  Once called upon to provide a justification for conduct in a criminal case, the government's response in most cases will probably be that its attorneys and investigators acted properly. Further, if the Court asked the government to document decisions or to maintain records showing how it reached a particular position, those records would probably reveal little suggesting an unreasonable or

impermissible rationale for the prosecutor's conduct, even assuming there was such an improper motivation.

If the Supreme Court permits questioning of prosecutors about subjective intent, it will be difficult for lower courts to reject responses as untrue, regardless of whether they appear contrived or as a post hoc rationalization. Indeed, the exception to this analysis, Batson, proves the folly of permitting judicial inquiry into the prosecutor's reasons for acting. In evaluating the proffered justification for a peremptory challenge, the Court stated that assessing the constitutionality of the attorney's conduct "does not demand an explanation that is persuasive, or even plausible." Arguably, then, there is no real reason to ask a prosecutor about prosecutorial motive when it is unlikely the prosecutor will produce anything worth the court's consideration. Ascertaining a prosecutor's actual state of mind is qualitatively different from determining a defendant's intent in committing a crime.

In a criminal prosecution, the government tries to prove intent through the perpetrator's actions and words, asking the trier of fact to infer the defendant's state of mind from this objective evidence. Judicial inquiry into prosecutorial intent is dissimilar because the court compels an advocate, in the midst of a contentious proceeding, to describe the reasoning for pursuing a course of action. Further, proof of prosecutorial misconduct often relies on the prosecutor's own statements, which is subjective evidence, rather than objective conduct. Unlike the prosecution

of a criminal case, which has a retrospective focus and the need for objective facts on which to draw inferences, a judicial assessment of prosecutorial intent with respect to possible misconduct would be almost contemporaneous with the questioned conduct, and the court does not necessarily have any observable objective conduct on which to base such an assessment.

 Courts compelling disclosure of motives or knowledge essentially would be asking prosecutors to justify their actions in order to avoid a finding in favor of their opponent, a person whom the prosecutor believes committed a criminal offense. The hope would be that a prosecutor would always respond with complete candor, regardless of the effect on a pending or completed case. A realistic view should acknowledge, however, that putting such a question to an advocate seeking the conviction of an alleged criminal raises a serious concern regarding the expected veracity, or at least the completeness, of the response. In other words, courts trying to discern the government's actual intent may be extending to some prosecutors a tempting opportunity to lie to protect the criminal prosecution.

 By using the word "lie," I do not mean to imply that prosecutors will brazenly misstate the truth, although that can happen on occasion. Instead, I employ the term as the starkest result of the calculus that individuals, asked to justify their actions, may undertake to put their position in the best light possible, especially when they understand the potential adverse consequence of a finding of

16

improper conduct or motivation. As the late johnny Cochran put it, "[w]hat prosecutor in his senses would admit to being motivated by personal pique? What action could not be rationalized as a good faith effort to discern community needs?" A prosecutor may act after weighing conflicting reasons in response to Unconscious motives, or based only on instinct when deciding whether to pursue a particular course of action. When called upon to explain the reason for that conduct, a prosecutor, serving as the government's advocate, may, and perhaps should, try to put his conduct in the best light to protect the government's case. When the impulse to present the government's case in the best light possible is combined with the dictates of the adversarial system, which compel attorneys for each side to vigorously assert the position of their client, a court's inquiry into intent might tempt a prosecutor to explain his actions in a way that may not necessarily reflect all of his private thoughts or motivations. A judicial assertion that the government attorney owes a special duty to uphold justice serves as powerful rhetoric that highlights the danger to society when a prosecutor engages in misconduct. The admonitions to prosecutors in ethical codes and judicial opinions to "do justice" in prosecuting a case has little meaningful effect, however, when the public judges prosecutors by the results of cases. Government attorneys are also aware that they operate within an adversarial system in which that same duty is not imposed on the other side. This could, in some circumstances, allow

defense counsel to employ tactics that may obfuscate the truth without fear of admonition or reprisal.

### C. THE GOVERNMENTS "SECOND" IMPROPER REASON FOR SUPERSEDING DEFENDANT

Ausa silverberg also confessed that as a secondary reason the government superseded defendant was to attempt to circumvent this court ruling in defendants favor as he believed there would be a "legal issue" with regards to potential trial testimony of convicted drug dealers Elbert Pemberton and Darla Okada and that this court would prohibit such testimony under FRE 404(b). **So to be clear the government charges defendants with criminal counts merely to be able to get otherwise inadmissible evidence into evidence and not because they believe defendant is guilty beyond a reasonable doubt, undoubtedly this amounts to prosecutorial misconduct (see exhibit C).** The government only charged defendant with count 6; conspiracy to distribute and possess with intent to distribute a controlled substance (21 U.S.C 846) and count 7; distribution and aiding/abetting the distribution of a controlled substance (21 U.S.C 841 (a)(1), 841 (b)(1)(A)(viii) and 18 U.S.C 2) as a way to get improper character evidence in through the back door not believing defendant guilty of theses charges hence why government delayed charging defendant for over five years but only wanting to use this information to effect counts 1-5 which is unrelated conduct in attempt to paint defendant as a drug dealer using convicted drug traffickers who are willing to say

18

anything to help themselves because they were discovered by federal law enforcement to be pound quantity methamphetamine dealers. The government cannot abuse its power to present evidence to grand juries knowing how easy it is to obtain such an indictment as it is said a prosecutor could indict a kaliua pig which speaks on the ease in which a prosecutor may obtain an indictment. The government intention to charge counts 6 and 7 merely so he could back door inadmissible FRE 404(b) evidence is misconduct and further highlights why counts 6-8 of the superseding indictment should be dismissed with prejudice.

The Supreme court has emphasized "the special role played by the American prosecutor in the search for truth in criminal trials" *Strickler v. Greene*, 527 U.S. 263, 281, 144 L. Ed. 2D 286, 119 S. Ct. 1936 (1999). "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded "PROCEDURAL JUSTICE"…" ABA Model Rules Of Professional Conduct Rule 3.8 cmt. (2002); the prosecutor is both an administrator of justice and an advocate. The prosecutor must exercise sound discretion in the performance of his or her functions."); id. At 3.1-1(c) ("THE DUTY OF THE PROSECUTOR IS TO SEEK JUSTICE, NOT MERELY TO CONVICT")(emphasis added); *see also Hayes v. Brown*, 399 F.3d 972, 978  (9th cir. 2005) ("The prosecuting attorney's obligation is to govern impartially {408 F.3d 1175} to do justice and to

assure that the defendant has a fair and impartial trial") (quoting *Commonwealth of The Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th cir. 1992) (citations omitted), (overruled on other grounds by George v Camacho, 119 F.3d 1393 (9th cir. 1997) (en banc)). Also see rule 8.4 (c) "MISCONDUCT" of the Hawaii rules of professional conduct where it states "no attorney admitted to practice law in the state of Hawaii may engage in conduct involving dishonesty, fraud, deceit or "MISREPRESENTATION"(emphasis added).

## V. CONCLUSION:

The government cannot escape there repeated conduct and behavior in this case, this court must stand up to the governments tactics as such actions would help preserve the dignity of the judicial system and this court. The government has continued to use improper methods calculated to bring about a wrongful conviction using there charging power to engage in litigation gamesmanship and prosecutorial misconduct. Defendant respectfully requests that this court dismiss counts 6-8 of the first superseding indictment with prejudice for vindictive prosecution, prosecutorial misconduct and repeated unconstitutional delay.

> Respectfully submitted,
> Bronsen K. Gouveia pro-se