ORIGINAL

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

WAYNE A. MYERS
Chief, General Crimes Section

MARSHALL H. SILVERBERG #5111
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: Marshall.Silverberg@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 0 2 2025

at _2_ o'clock and _47_ min. _P_ M
Lucy H. Carrillo, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 22-00064 LEK |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE:  July 2, 2025 |
| BRONSON K. GOUVEIA, | ) TIME:   2:00 p.m. |
| also known as Bronsen Gouveia, | ) JUDGE: Hon. Leslie E. Kobayashi |
| | ) |
| Defendant. | ) |
| | ) |

## **MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the Acting United States Attorney for the District of Hawaii (the "United States Attorney"), and the defendant, BRONSON K. GOUVEIA, also known as Bronsen Gouveia, and his counsel, Matthew Mannisto, Esq., have agreed upon the following:

## THE CHARGES

1.    The defendant, who waives any challenge to the spelling of his first name, acknowledges that he has been charged in the Superseding Indictment with the following: Count 1: possession with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, located in a duffel bag in the defendant's bedroom, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); Count 2: possession of three firearms in furtherance of the drug trafficking crime charged in Count 1, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(i); Count 3: possession with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, located in a safe in the defendant's bedroom in his residence, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); Count 4: possession of a fourth firearm in furtherance of the drug trafficking crime charged in Count 3, in violation of 18 U.S.C. § 924(c)(1)(B)(i); Count 5: possession of two firearms and ammunition after a felony

2

conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); Count 6:

conspiring with others to distribute and possess with intent to distribute a

controlled substance, namely 50 grams or more of methamphetamine, a Schedule

II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii),

and 846; Count 7: distribution of, and aiding and abetting the distribution of, a

controlled substance, namely 50 grams or more of methamphetamine, a Schedule

II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A)(viii) and 18 U.S.C. § 2; and Count 8: tampering with a witness (the

defendant's ex-girlfriend) by using, and attempting to use, intimidation and threats

against her and her mother, in violation of 18 U.S.C. § 1512(b)(3).

  2.  The defendant has read the charges contained in the Superseding

Indictment, and the charges have been explained to him by his counsel, Matthew

D. Mannisto, Esq.

  3.  The defendant fully understands the nature and elements of the crimes

with which he has been charged in the Superseding Indictment.

## THE AGREEMENT

  4.  The agreement between the parties includes the following provisions:

  a.  The defendant will enter voluntary pleas of guilty to Counts 1,

2 (but only with respect to the .40 caliber pistol), 5, and 6 of the Superseding

3

Indictment.  In exchange, the United States Attorney for the District of Hawaii ("the government") agrees to dismiss the remaining counts of the Superseding Indictment after sentencing.  The government also agrees not to seek any additional charges against the defendant based upon the information in the government's possession as of the date of this Memorandum of Plea Agreement (the "Agreement").

       b.    The government and the defendant also agree that this is a binding agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure; that is, there are sentencing stipulations that shall be imposed by the Court if it accepts this Agreement.  The government and the defendant agree that, under Rule 11(c)(5)(B) of the Federal Rules of Criminal Procedure, if the Court rejects the Agreement, including the sentencing stipulations set forth below, the defendant may withdraw from it and withdraw his pleas of guilty.

5.    The defendant agrees that the Agreement shall be filed and become part of the record in this case.

6.    The defendant enters these guilty pleas because he is in fact guilty of the crimes charged in Counts 1, 2, 5, and 6 of the Superseding Indictment.  The defendant agrees that these guilty pleas are voluntary and not the result of force or threats.

4

## PENALTIES

7.    The defendant understands that the penalties for the offenses to which he is pleading guilty include:

a.    As to Counts 1 and 6, mandatory minimum terms of imprisonment of not less than 10 years and up to life, a fine of up to $10,000,000, plus a term of supervised release of at least five years and up to life.

b.    As to Count 2, because the defendant is pleading guilty only to possessing the .40 caliber pistol in furtherance of the drug trafficking offense charged in Count 1 of the Superseding Indictment, a mandatory minimum term of imprisonment of not less than 5 years and up to life, with such term of imprisonment to be imposed by the Court and served by the defendant consecutive to any other term of imprisonment including, but not limited to, the terms of imprisonment imposed as to Counts 1, 5, and 6, as well as the 10-year term of imprisonment that the defendant is now serving pursuant to his conviction in *State of Hawaii v. Bronson Gouveia*, 1CPC-18-0002012; plus a fine of up to $250,000 and a term of supervised release of up to five years.

c.    As to Count 5, a maximum term of imprisonment of 10 years, a fine of $250,000, and a term of supervised release of up to three years.

5

d.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.  The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

e.      <u>Loss of Federal Benefits</u>.  At the discretion of the Court, the defendant may also be denied any or all federal benefits, as that term is defined in Title 21, United States Code, Section 862, (a) for up to five years if this is the defendant's first conviction of a federal or state offense amounting to the distribution of controlled substances, or (b) for up to ten years if this is the defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances.  If this is the defendant's third or more conviction of a federal or state offense amounting to the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in Title 21, United States Code, Section 862(d).

6

## FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not

a detailed recitation, but merely an outline of what happened in relation to the

charges to which the defendant is pleading guilty:

a.    Beginning in February or March 2018, and continuing through

March 5, 2020, the defendant agreed and conspired with four other individuals to

distribute a controlled substance, namely methamphetamine, a Schedule II

controlled substance, in the District of Hawaii, and the defendant admits he is

guilty of the conspiracy offense charged in Count 6 of the Superseding Indictment.

b.    One of the members of the conspiracy was Darla Okada, who is

the defendant in *United States v. Darla Okada*, Cr. No. 19-00161 HG (D. Haw.).

The defendant admits that as part of and in furtherance of the conspiracy, in 2018

he personally distributed, or he had another member of the conspiracy distribute on

his behalf, approximately 13 pounds of methamphetamine to Darla Okada,

knowing that she intended to "break down" those quantities into ounces or smaller

quantities and then distribute the methamphetamine to others in the Hawaii

community for profit.

c.    Another member of the conspiracy was the defendant's second

cousin, Elbert W. Pemberton, II., also known as Dub or Dub J, who is the

7

defendant in *United States v. Elbert W. Pemberton, II,* Cr. No. 24-00009 HG (D. Haw.). Like with Okada, the defendant knew that Pemberton intended to "break down" the pound quantities of methamphetamine the defendant sold to him into smaller quantities, such as ounces, in order to sell those quantities of methamphetamine to others in the Hawaii community for a profit. The total quantity of methamphetamine the defendant distributed, directly or indirectly, to Pemberton in 2018-2019 was approximately 40-50 pounds.

   d. While the defendant was in state custody on December 24, 2019, he had another conspirator distribute and "front" approximately 5 pounds of methamphetamine to Pemberton, with Pemberton then owing the defendant $25,000 for those 5 pounds. That conduct is charged in Count 7 of the Superseding Indictment and while the defendant is not pleading guilty to that count, he acknowledges that such conduct was part of the conspiracy charged in Count 6 of the Superseding Indictment.

   e. On February 15, 2020, Pemberton turned those 5 pounds of methamphetamine over to special agents of the U.S. Drug Enforcement Administration (DEA). A DEA chemist later determined that the substance Pemberton surrendered (DEA Exhibit 10) was 1,902 grams of actual/pure methamphetamine. On March 5, 2020, Pemberton paid the defendant, via another

8

co-conspirator, $10,000 of the $25,000 that he owed the defendant for the 5 pounds of methamphetamine.

       f.     The defendant admits and agrees that beginning in February or March 2018, and continuing thereafter at least until March 5, 2020, he did knowingly and intentionally conspire and agree with Okada, Pemberton, and others to distribute and possess with intent to distribute a controlled substance, namely 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), and that he is guilty of the offense charged in Count 6 of the Superseding Indictment.

       g.     On December 23, 2018, the defendant was residing at 47-351 #F, Waihee Road, Kahaluu, Hawaii, in the District of Hawaii (hereinafter "the residence"). At approximately 12:46 p.m. on December 23, 2018, the defendant's girlfriend drove up to the residence. A few minutes later, the defendant and his girlfriend had a heated verbal dispute. At approximately 12:52 p.m., the girlfriend got into her vehicle and attempted to drive away. The defendant went into the residence, obtained a loaded .40 caliber handgun, and went back outside. The defendant, using that handgun, then fired approximately 10 rounds of ammunition at his girlfriend as she drove away in her vehicle.

h.    One of the rounds of ammunition fired by the defendant hit his girlfriend in the back of the neck and, as a result, she crashed her vehicle into a nearby fence.  The defendant left the residence to check on her status, saw that she was alive and able to seek assistance, and ran back to the residence.  The defendant then locked the residence and drove away in his vehicle and fled the scene.

i.    On December 23, 2018, after the shooting had occurred, Honolulu Police Department (HPD) officers obtained and executed a search warrant of the residence.  In the sole bedroom of the residence, used by the defendant, HPD officers observed an unzippered duffel bag with camouflage print, which contained what appeared to be two plastic bags with methamphetamine. HPD officers seized the two plastic bags containing the suspected methamphetamine, and the bags were later transferred to the custody of the DEA. The contents of those two bags were tested by a DEA chemist.  One plastic bag (DEA Exhibit 9) contained approximately 879 grams of actual/pure methamphetamine.  The other plastic bag (DEA Exhibit 8) contained approximately 347 grams of actual/pure methamphetamine, for a total of 1,226 grams of actual/pure methamphetamine.  The defendant admits that he possessed the 1,266 grams of methamphetamine with the intent to distribute it to others and that he is guilty of the offense charged in Count 1 of the Superseding Indictment.

10

j.    When he left the scene, the defendant took the .40 caliber pistol with him, which he admits was a "firearm" within the meaning of Title 18, United States Code, Section 921(a)(3).  The defendant further admits that he knowingly possessed that .40 caliber firearm in furtherance of the drug trafficking crime charged in Count 1 of the Superseding Indictment, in that he used it for protection for when he possessed with the intent to distribute a controlled substance, namely methamphetamine.  The defendant admits that in doing so he violated Title 18, United States Code, Section 924(c)(1)(A)(i) and that he is guilty of the crime charged in Count 2 of the Superseding Indictment, but only inasmuch as it involves admitting that he possessed the .40 caliber pistol/firearm in furtherance of the drug trafficking crime charged in Count 1 of the Superseding Indictment, and not with respect to the two other firearms charged in Count 2.

k.    Also, while in the residence on December 23, 2018, and during the execution of the search warrant, HPD officers observed leaning against a wall in that same bedroom in the residence, and located only a few feet from the duffel bag, a short-barreled rifle.  They seized it and another rifle they discovered in the closet in the defendant's bedroom, which the defendant also possessed.

l.    The short-barreled rifle was a "firearm" within the meaning of Title 18, United States Code, Section 921(a)(3), manufactured by Daniel Defense,

11

LLC, under the brand name of Ambush Firearms, and it was a Model A11, Multi Caliber, with a serial number of AF000730C. The short-barreled rifle was manufactured in Georgia or South Carolina and it was loaded with 30 rounds of 5.56 caliber ammunition. The rifle and the ammunition in it were manufactured outside of Hawaii and later transported in interstate commerce to Hawaii.

   m. On December 23, 2018, when he possessed the short-barreled rifle, the defendant had previously been convicted of multiple crimes that were punishable by terms of imprisonment greater than one year. More specifically, on March 30, 2009, the defendant was convicted and sentenced to 10 years in prison in *State of Hawaii versus Bronson Gouveia*, Cr. No. 08-I-1272, for the crime of Attempted Assault in the First Degree, in violation of Hawaii Revised Statutes Sections 705-500 & 707-710. Further, at the time the defendant possessed that short-barreled rifle, the defendant knew that he had been convicted of one or more offenses that were punishable by a term of imprisonment of greater than one year. The defendant further admits that the short-barreled rifle and the ammunition loaded in it had been manufactured outside of Hawaii (with the rifle having been manufactured either in Georgia or South Carolina) and transported in interstate commerce to reach Hawaii. As such, the defendant admits that he is guilty of Count 5 of the Superseding Indictment.

n.    When the HPD officers searched the residence on December 23, 2018, they observed a locked safe in the defendant's bedroom.  The next day, December 24, 2018, HPD officers obtained and executed a second search warrant that authorized a search of the safe.  Inside the safe, HPD officers discovered a plastic bag that contained approximately 100 grams of actual methamphetamine, which the defendant possessed with intent to distribute, another short-barreled rifle, and $6,100 in cash, all of which the defendant possessed on Dec. 23, 2018.

## SENTENCING STIPULATIONS

9.    Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.    The parties stipulate that the defendant possessed with intent to distribute the following controlled substances:

1) 100 grams of methamphetamine found in DEA Exhibit 7 (recovered from the safe in the defendant's bedroom);

2) 347 grams of methamphetamine found in DEA Exhibit 8 (one of the two plastic bags recovered from the duffel bag in the defendant's bedroom);

3) 879 grams of methamphetamine found in DEA Exhibit 9 (the second of the two plastic bags recovered from the duffel bag in the defendant's bedroom); and

13

4) 1,902 grams of methamphetamine found in DEA Exhibit 10 (distributed by the defendant's co-conspirator on December 24, 2019, to Elbert Pemberton and turned over to DEA by Pemberton on February 15, 2020).

Total: 3,228 grams of actual/pure methamphetamine.

b.      The parties stipulate that the base offense level also should include the 13 pounds (about 7.2 kg) of methamphetamine that the defendant distributed to Darla Okada and the additional approximately 35 pounds (about 16 kg) of methamphetamine he distributed (directly or indirectly) to Pemberton.

c.      The defendant admits that he attempted to obstruct justice by falsely informing the Court that another individual, Roy Batungbacal (now deceased), was the actual owner and possessor of all the drugs and firearms recovered from the defendant's residence.  Because the defendant attempted to obstruct justice in shifting culpability to Mr. Batungacal, he agrees that a two-level enhancement pursuant to U.S.S.G. § 3C1.1 is warranted.

d.      The defendant further admits that he attempted to obstruct justice by making threats to his ex-girlfriend – including threats to kill her and her mother – because she was cooperating with federal law enforcement efforts to prosecute him for the crimes that were later charged in the Superseding Indictment. The parties agree that this conduct presents an alternative reason why a two-level

enhancement pursuant to U.S.S.G. § 3C1.1 is warranted. The parties agree that only one such enhancement is warranted even though the defendant attempted to obstruct justice in two different ways.

   e. As of the date of this agreement, it is expected that the defendant will enter pleas of guilty to Counts 1, 2, 5, and 6 of the Superseding Indictment, will truthfully admit his involvement in the charged offenses and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility. If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of two levels for acceptance of responsibility will be appropriate. *See* U.S.S.G. § 3E1.1(a).

   f. This agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which authorizes the parties to agree upon a specific sentence or sentencing range as an appropriate disposition of the case. The parties agree that: (1) as to Counts 1, 5, and 6 of the Superseding Indictment, the specific sentence should be a term of imprisonment of 120 months (10 years) for each count, with such terms to run concurrently with each other and concurrently with the remainder of the Hawaii state sentence that the defendant is currently serving in *State of Hawaii v. Gouveia*, 1CPC-18-0002012, beginning on

15

the date that sentence is imposed in this matter; and (2) as to Count 2 of the Superseding Indictment, the specific sentence of a term of imprisonment of 60 months (5 years) that shall run *consecutively* to the terms of imprisonment for Counts 1, 5, and 6 of the Superseding Indictment as well as *consecutively* to the remainder of the term of imprisonment that the defendant is serving in *State of Hawaii v. Gouveia*, 1CPC-18-0002012.  In addition, the sentence will include a term of 10 years of supervised release to follow, pursuant to Title, United States Code, Section 3583.  The defendant agrees not to seek a reduction in that 10-year term of supervised release until he has served at least five years of it.  The defendant agrees to waive his rights to seek an earlier termination of the 10-year term of supervised release.

g.    The defendant understands that pursuant to Rule 11(c)(3) of the Federal Rules of Criminal Procedure, the Court may accept this Agreement, reject it, or defer a decision until the Court has reviewed the presentence report.  The defendant understands that the Court will not accept a plea agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

h.     Pursuant to CrimLR 32.1(a)(3) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.2(c)(2) of the Sentencing Guidelines, the parties agree that, given the defendant's admissions in this Agreement and full acceptance of responsibility for relevant conduct, to the extent a 15-year sentence, to be followed by a 10-year term of supervised release, varies from the applicable Guidelines range, the variance is justifiable under Section 6B1.2(c)(2) of the Guidelines because it would provide for appropriate punishment, deterrence, promote respect for the law, and serve the statutory goals of sentencing set forth in Title 18, United States Code, Section 3553(a).

10.     The parties agree that if the Court rejects the 15-year sentence, with a 10-year term of supervised release to follow, the defendant has the right to withdraw his pleas of guilty pursuant to Federal Rule of Criminal Procedure 11(c)(5)(B).  Nothing in this Agreement shall bind or restrict the Court in any way with respect to other aspects of sentencing, such as the amount of any fine or the conditions of supervised release.

/     /

/     /

/     /

17

## APPEAL/COLLATERAL REVIEW

11.    The defendant is aware that he ordinarily would have the right to appeal his conviction and the sentence imposed.  Nevertheless, the defendant knowingly waives the right to appeal any sentence consistent with this Agreement, namely a sentence that includes a term of imprisonment of 15 years, a 10-year term of supervised release to follow, and a fine of up to $10,000,000.  The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

12.    The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except based on a claim of ineffective assistance of counsel that arose during the time periods in this case when he was represented by counsel.

13.    The defendant has discussed these waiver issues with his counsel and he fully understands them.

14.    The prosecution retains its right to appeal the sentence and the way it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

18

## **FINANCIAL DISCLOSURE**

15.     In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

b.     The defendant agrees to truthfully complete the financial statement form provided to the defendant in connection with this Agreement by the earlier of 45 days from the defendant's signature on this Agreement or the date of the defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to the United States Attorney's Office and the United States Probation Office.

c.     The defendant agrees to provide updates with any material changes in circumstances, as described in Title 18, United States Code, Section 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.

d.     The defendant's failure to timely and accurately complete and sign the financial statement, and any update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

e.      The defendant expressly authorizes the United States Attorney's Office to obtain a credit report on him.  The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

f.      Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships and corporations.

## IMPOSITION OF SENTENCE

16.      The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.  The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17.      The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.  The defendant understands that the Court will not accept an

20

agreement unless the Court determines the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18.     The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury.  The defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.  The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the

defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

      c.    If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

      d.    At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those prosecution witnesses, and he would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

      e.    At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

    19.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. The defendant's counsel has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.     If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty pleas and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.  The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.  The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

23

22.     In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.  The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23.     The defendant and his counsel acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.  Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements, or conditions between the parties.

24.     To become effective, this Agreement must be signed by all signatories listed below.

25.     Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

/     /

/     /

24

AGREED:

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii


_____        Dated: 7/1/25
WAYNE A. MYERS
Chief, General Crimes Section


_____        Dated: 7/1/25
MARSHALL H. SILVERBERG
Assistant United States Attorney


_____        Dated: 7/2/25
BRONSON K. GOUVEIA,
  also known as Bronsen Gouveia


_____        Dated: 7/2/25
MATTHEW D. MANNISTO, Esq.
  Counsel for Defendant Gouveia


25